IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Cynthia M. Gaines, | ) | C/A No. 0:14-3363-PJG |
|              Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
|              Defendant. | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Cynthia M. Gaines, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and that the case should be remanded to the Commissioner for further administrative action.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In January 2012, Gaines applied for DIB and SSI, alleging disability beginning April 7, 2000.[2]  Gaines's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on October 31, 2013, at which Gaines, who was represented by J. Leeds Barroll, IV, Esquire, appeared and testified.  After hearing testimony from a vocational expert, the ALJ issued a decision on December 30, 2013 concluding that Gaines was not disabled.  (Tr. 11-22.)

Gaines was born in 1967 and was forty-five years old at the time of her amended alleged disability onset date.  (Tr. 203.)  She has a high school education and has past relevant work experience as a cashier/greeter/bagger at a grocery store and a store associate/stocker.  (Tr. 237.)  Gaines alleged disability due to a heel spur, depressive anxiety disorder, cerebral palsy, asthma, and numbness in both legs.  (Tr. 236.)

In applying the five-step sequential process, the ALJ found that Gaines had not engaged in substantial gainful activity since May 18, 2012—her amended alleged onset date.  The ALJ also determined that Gaines's obesity; residual effects of cerebral palsy; and residual effects of foot problems, including heel spurs and hammertoes, were severe impairments.  However, the ALJ found that Gaines did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that Gaines retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations:  no required interaction with the public or "team"-type interaction with co-workers; no carrying over 10 pounds; no standing and/or walking

---

[2] Gaines amended her alleged onset date to May 18, 2012 prior to her hearing before the ALJ.  (Tr. 35.)



> over two hours in an eight-hour workday; no more than occasional stooping, twisting, crouching, kneeling, crawling, balancing, or climbing of stairs or ramps; no climbing of ladders or scaffolds; no foot pedals or other controls with either lower extremity; avoidance of unprotected heights, vibration, and machinery with exposed, hazardous moving parts.

(Tr. 16.) The ALJ found that Gaines was unable to perform any past relevant work and that, considering Gaines's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Gaines could perform. Therefore, the ALJ found that Gaines was not disabled during the relevant period.

The Appeals Council denied Gaines's request for review on August 6, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUES**

Gaines raises the following issues for this judicial review:

I. The ALJ erred in failing to find any of the plaintiff's psychiatric impairments severe.

II. The ALJ erred in citing GAF numbers to reject Dr. Cherry's conclusions.

III. The ALJ erred in rejecting the plaintiff's cerebral palsy impairments based upon the paucity of medical treatment for cerebral palsy.

IV. The ALJ erred in finding a sedentary RFC by making significant omissions regarding the Agency's own CE, Dr. Bledsoe.

V. The ALJ erred in failing to properly evaluate the plaintiff's pain and mental symptoms, pursuant to SSR 96-7p.

VI. The ALJ erred in failing to honor the Treating Physician Rule.

(Pl.'s Br., ECF No. 11.)

**DISCUSSION**

Gaines presents several issues on appeal. For the reasons that follow, the court agrees that the ALJ's determination at Step Two of the sequential process is unsupported by substantial evidence, which impacts the remaining steps of the sequential process. Therefore, the court addresses this issue first.

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that she has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples of these include:



> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id. "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted). As the United States Court of Appeals for the Third Circuit has explained, the "inquiry is a *de minimis* screening device to dispose of groundless claims." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (internal citation omitted; emphasis in original); see also Yuckert, 482 U.S. at 153-54.

Here, Gaines has offered sufficient evidence to demonstrate that her mental impairment has more than a minimal effect on her ability to perform work-related functions. Gaines testified at the administrative hearing that starting in 2009, she obtained treatment from psychiatrist Dr. Anna Cherry every three months. (Tr. 37.) Plaintiff testified that she was psychiatrically hospitalized in 2010 for suicidal thoughts, and that counselor Charles Hainsworth had been providing service weekly at her home since 2010. (Tr. 53, 56-57.) Gaines further testified that she was in special education classes, as acknowledged by the vocational expert, but that her New Fairfield High School records had been destroyed. (Tr. 40-46.) Testifying as to her mental symptoms, Gaines stated that she suffers from depression, including crying for one or two hours per day, has trouble learning new things, and can only concentrate for five minutes. (Tr. 53-55.) Gaines testified that she had been taking Prozac and Vistaril since 2009. (Tr. 57-59.)



The record confirms that on November 4, 2010, Gaines was admitted involuntarily to Three Rivers Center for Behavioral Health in Columbia, South Carolina, for "[d]anger to self and others" and "[i]mpaired mood." (Tr. 329-32.) The record also indicates that Gaines was seen initially at the Lexington County Community Mental Health Center on October 21, 2009 because she was feeling suicidal, was experiencing crying spells and nightmares, and was sleeping all day. (Tr. 420.) On February 7, 2011, Gaines was seen by Dr. Cherry and diagnosed with "major depressive disorder, recurrent, moderate." (Tr. 436.) On April 4, 2011, Dr. Cherry saw Gaines and noted the same diagnosis. (Tr. 418.) On June 13, 2011, Dr. Cherry continued the same diagnosis, and included suicidal ideation. (Tr. 416.) On August 8, 2011, Dr. Cherry saw Gaines and added personality disorder to her diagnosis. (Tr. 414.) Again, Dr. Cherry noted that same diagnosis on October 4, 2011, and on December 8, 2011. (Tr. 409-12.) On May 17, 2012, Dr. Cherry opined that although Gaines was not a reliable historian due to being invested in getting disability, "based on interactions with others [in her apartment complex], [Gaines] would likely have difficulty getting along well [with] othe[rs]." (Tr. 399.) Dr. Cherry's diagnoses of major depressive disorder, and personality disorder with borderline and narcissistic and dependent traits, remained unchanged through her meetings with Gaines on July 23, 2012, October 1, 2012, November 26, 2012, March 14, 2013, May 9, 2013, and August 1, 2013. (Tr. 423-32.) On October 13, 2013, Dr. Cherry completed a Psychiatric Review Technique Form, noting that "Patient has difficulty with interpersonal relationships and dependability, and would have much difficulty maintaining employment. Her coping abilities are limited and I feel that therapy to help her become more functional would have limited success." (Tr. 445.) Dr. Cherry opined that Gaines had moderate restrictions in the areas of activities of daily living, and in maintaining concentration, persistence or pace; and extreme difficulties in maintaining social functioning. (Tr. 448.)



The ALJ found that Gaines's major depressive disorder and personality disorder did not constitute severe impairments because they were "well managed with appropriate care and treatment and/or fail to produce more than a minimal effect on the claimant's ability to perform basic work activities." (Tr. 14.) Further, the ALJ determined that Gaines's "mental impairments of major depressive disorder and personality disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 14-15.) In making this finding, the ALJ considered the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1). The ALJ considered the four broad functional areas, which are known as the "paragraph B" criteria, specifically finding as follows:

> The first functional area is activities of daily living. In this area, the claimant has no limitation. First, multiple State Agency medical expert determinations indicate that the claimant has no limitation in this area (Exhibits 3A-5A and 8A). Moreover, the most recent treatment notes from Dr. Cherry show that the claimant has a global assessment of functioning scale score of 61, indicative of only mild symptoms . . . . Furthermore, the record shows that the claimant can complete an impressive spectrum of activities of daily living, including working part-time around coworkers and the public; following television programming; driving; preparing meals; performing household chores; independently maintaining a household alone; and shopping in stores (Exhibit 4E and testimony). This evidences no limitation in this area.

> The next functional area is social functioning. In this area, the claimant has mild limitation. First, again, multiple State Agency medical expert determinations show that the claimant has no more than mild limitation in this area (Exhibits 3A-5A and 8A). Moreover, the most recent treatment recent treatment notes from Dr. Cherry show that the claimant has a global assessment of functioning scale score of 61, indicative of only mild symptoms . . . . Furthermore, the record shows that the claimant can engage the public by working part-time around coworkers and the public; driving; and shopping in stores (Exhibit 4E and testimony). This evidences no more than mild limitation in this area.

> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. First, once more, multiple State Agency medical expert determinations show that the claimant has no more than mild limitation in this area



>(Exhibits 3A-5A and 8A).  Moreover, the most recent treatment recent treatment notes from Dr. Cherry show that the claimant has a global assessment of functioning scale score of 61, indicative of only mild symptoms . . . .  Furthermore, the record shows that the claimant can complete a number of activities of daily living that require notable degrees of concentration, persistence, and pace, including working part-time around coworkers and the public; following television programming; driving; preparing meals; independently maintaining a household alone; and shopping in stores (Exhibit 4E and testimony).  Beyond that, a State Agency employee who met with the claimant observed that she had no problems whatsoever with attention, concentration, understanding, and coherency (Exhibit 1E).  This evidences no more than mild limitation in this area.
>
>The fourth functional area is episodes of decompensation.  In this area, the claimant has experienced no episodes of decompensation, which have been of extended duration.  During the period in question, there is no indicia whatsoever of episodes of decompensation.  Prior to the amended alleged onset date, the claimant was briefly admitted for inpatient care under Dr. Dodds; however, these records show that the claimant was easily stabilized with medicinal adjustment (Exhibit 4F).  This also fails to relate to the claimant's condition during the period in question.

(Tr. 15-16.)

The court reiterates, an impairment is not severe "only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans, 734 F.2d at 1014 (internal citation and quotation omitted) (emphasis in original); see also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n. 1 (4th Cir. 1999).  "[T]his is not a difficult hurdle for the claimant to clear." Albright, 174 F.3d at 474 n. 1.  Gaines cites numerous records supporting her position that her mental impairments are more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans, 734 F.2d at 1014 (emphasis deleted); see also Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (finding that an ALJ may only declare an impairment to be "not severe" if the medical evidence on record clearly establishes that the impairment is "a slight abnormality that has no more than a minimal effect on an individual's ability to work").



Here, the ALJ cited to the state agency consultants, who acknowledged Gaines's affective and personality disorders, but opined that Gaines has no restriction in activities of daily living, and mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. 91, 103, 117, 133.) However, none of these state agency records reviewers had the benefit of the opinion of Gaines's treating psychiatrist, Dr. Cherry, who provided ongoing treatment during the relevant time period and for an extended period before that.[3] In conducting his analysis, the ALJ appears to have further disregarded Dr. Cherry's opinion based on medical records repeatedly assigning a GAF score of 61. With regard to GAF scores, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or

---

[3] The ALJ also appears to have disregarded Gaines's involuntary admission to a mental health institution in 2010 based on the fact that it occurred prior to her amended onset date. (See Tr. 15-16, 329-32.) However, the Fourth Circuit has recognized that medical records from outside the relevant time period should be considered if they relate to the period in question. Cf. Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 345 (4th Cir. 2012) (finding that consideration of medical evidence outside of the relevant time is period proper when such evidence may be "reflective of a possible earlier and progressive degeneration"); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985) (evidence should not be disregarded merely because an evaluation occurred outside the relevant time period so long as it may be relevant to prove a disability during the relevant time period). In Bird, the court concluded the records post-dating the relevant time period should have been considered. Here, the records pre-date the relevant time period because the incident they document happened before Gaines's amended onset date. While such records may not always be probative of an applicant's disability, the court concludes that depending on the nature of the impairment at issue, they could be relevant to a disability application. For example, they may document symptoms that occurred prior to the onset date but that nonetheless contribute to or indicate the severity of the applicant's alleged impairments that exist during the relevant time period. Such is the case here. Thus, the ALJ should not have ignored medical reports simply because they pre-dated the alleged onset of disability. See e.g., Lackey v. Barnhart, 127 F. App'x 455, 458-59 (10th Cir. 2005) (ALJ should not ignore medical reports simply because they pre-date the alleged onset of disability); Hamlin v. Barnhart, 365 F.3d 1208, 1223 n. 15 (10th Cir. 2004) (evidence that pre-dates the alleged onset date is relevant to a claimant's medical history).



impairment in functioning at the time of the evaluation.[4]  Importantly, a "[p]laintiff's GAF score is only a snapshot in time, and not indicative of [his] long term level of functioning." Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009).  "Without additional context, a GAF score is not meaningful." Green v. Astrue, No. 1:10-cv-1840, 2011 WL 1770262, *18 (D.S.C. May 9, 2011). Courts have found that an inconsistent GAF score alone, without further context and additional evidence, is insufficient to discount a treating physician's opinions. See Green, 2011 WL 1770262, at * 18 (finding "the ALJ erred in relying heavily on [a GAF score] in discounting the opinion of Plaintiff's treating psychiatrist"); Atkinson v. Astrue, 2011 WL 4085414, *11 (E.D. Cal. Sept.13, 2011) ("Where an ALJ fails to give specific reasons for rejecting an opinion due to an inconsistency related to GAF scores, or fails to identify substantial evidence in the record supporting the rejection, the ALJ's decision is erroneous."); cf. Radley v. Colvin, No. 6:13-cv-569, 2014 WL 3571446, *26 (D.S.C. July 17, 2014) ("To the extent the ALJ's citation to the GAF scores in assessing [the treating physician's] opinions of the plaintiff's limitations due to pain was in error, the undersigned finds that such error was at most harmless as the ALJ gave several valid reasons for discounting [the treating physician's] opinion.").  Moreover, review of the medical records at issue reveals ambiguity about whether Dr. Cherry actually assigned a new GAF score at each visit based on her examination of Gaines, or whether the number was pre-filled and automatically continued into forms prepared for subsequent visits.  In any event, the ALJ's over-reliance on the GAF score calls into question his rejection of Dr. Cherry's opinion in favor of state agency records reviewers who never examined Gaines.

---

[4] The court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



Additionally, the ALJ appears to have overstated Gaines's activities of daily living in light of her actual testimony and information provided to the agency. For example, the ALJ found that Gaines could complete "an impressive spectrum of activities of daily living" including driving, shopping, and working part-time. (Tr. 15.) These findings however, are refuted by the record. Gaines testified at the hearing that she sold her car in 2012 and had not driven since that time. (Tr. 74.) In fact, since selling her vehicle, she relied entirely on her caseworker for transportation. (Tr. 75.) Gaines testified that her caseworker transported her to the grocery store or to food banks. (Id.) In turn, she went shopping only with the assistance of her caseworker. Further, although Gaines was working two days per week for four hours per day when she completed her functional report in April of 2012, she reported that she was not working at all at the time of her hearing in October of 2013. (See Tr. 31, 259.) Based on the evidence presented, the court cannot say that there is "such relevant evidence as a reasonable mind might accept as adequate" to support the conclusion that Gaines's major depressive disorder and personality disorder were not severe impairments. See Richardson v. Perales, 402 U.S. at 401 (internal quotation marks and citations omitted).

The United States Court of Appeals for the Fourth Circuit has generally found an ALJ's error to be harmless where he "conducted the proper analysis in a comprehensive fashion," "cited substantial evidence to support his finding," and would have unquestionably "reached the same result notwithstanding his initial error." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). Here, the ALJ did not conduct the proper analysis in a comprehensive fashion or cite substantial evidence to support his findings. See id. Therefore, the court cannot find the error is harmless. Cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's Step Two error was harmless in light of his discussion of the claimant's impairment when assessing the claimant's residual functional capacity). Moreover, it appears that the ALJ's determination that Gaines's disorders were not severe



influenced his determination of Gaines's residual functional capacity at Steps Four and Five. Cf. Jones ex rel. Jones v. Astrue, 704 F.Supp.2d 522, 534 (D.S.C. 2010) ("Further, the Court finds that this error was not harmless because the finding that Claimant's back pain was not severe influenced the ALJ's determination of Claimant's residual functional capacity at steps four and five of the sequential disability evaluation."). On this record, the court cannot say that this is a situation where the ALJ would necessarily "have reached the same result notwithstanding his initial error." See Mickles, 29 F.3d at 921. Consequently, the court finds that remand is warranted based upon the ALJ's finding that Gaines's mental impairment was non-severe because that conclusion is not supported by substantial evidence. The court finds that this matter should be remanded for further consideration of Gaines's impairments at Step Two and their impact on the remaining steps of the sequential process.

In light of this decision, the court need not address Gaines's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Nonetheless, while Gaines may present her other arguments on remand if necessary, the court notes that in finding Gaines was not disabled under the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"), the ALJ appears to have also erred in rejecting Dr. Cherry's opinion by misapplying the treating physician rule. See Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). For example, the ALJ assigned Dr. Cherry's opinion little weight because he concluded that her treatment notes did not mention the limitations noted in her opinion. (Tr. 19.) However, as cited above, Dr. Cherry's treatment notes consistently referenced Gaines's major depressive disorder, personality disorder with borderline and narcissistic and dependent traits, and her inability to work with others. Although Dr. Cherry's treatment notes may not precisely track the

language of her subsequently issued opinion, the notes' silence as to these specifics does not necessarily indicate inconsistency with the opinion. SSR 96–2p provides that if a treating source's medical opinion is "well-supported and *not inconsistent* with the other substantial evidence in the case record, it must be given controlling weight" (emphasis added). See also 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and *not inconsistent* with other substantial evidence in the record) (emphasis added); see also Craig, 76 F.3d at 590 (finding a physician's opinion should be accorded "significantly less weight" if it is *not supported* by the clinical evidence or if it is *inconsistent* with other substantial evidence) (emphasis added).

The next reason the ALJ gave for rejecting Dr. Cherry's opinion was that Gaines had worked around others in the past. (Tr. 19.) However, Gaines's ability to work a part-time job in the past is not necessarily probative of her ability to do so at the time Dr. Cherry issued her opinion. Finally, the only remaining reason the ALJ gave for rejecting Dr. Cherry's opinion was his reliance on a social security field office interviewer's notes from February 2012 stating that he did not observe Gaines experiencing problems with hearing, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using her hands, or writing. (Tr. 231-34.) The court agrees with Gaines that such notes by a medically untrained agency clerical employee cannot alone constitute persuasive contrary evidence to reject a treating psychiatrist's opinion. Thus, none of the evidence relied upon by the ALJ constitutes persuasive contrary evidence to warrant rejection of Dr. Cherry's opinion. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Cooper v. Chater, 108 F.3d 1371 (4th Cir. 1997).

**ORDER**

Based on the foregoing, it is hereby

**ORDERED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

**IT IS SO ORDERED.**

February 19, 2016  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE